Jewel GRISHAM, Kathleen Bone, Julian D. Newbern, S. C. Newbern, Jr., Mary Louise Newbern, Sarah Lee Newbern, Peggy Sue Newbern, and Leta Rue Newbern, Plaintiffs in Error,

v.

SOUTHLAND ROYALTY COMPANY, a Corporation, Defendant in Error.

No. 37937.

Supreme Court of Oklahoma.

Oct. 21, 1958.

Rehearing Denied Dec. 9, 1958.

George Bingaman, Purcell, for plaintiffs in error.

Ames, Daugherty, Bynum & Black, Oklahoma City, for defendant in error.

BLACKBIRD, Justice.

Defendant in error and plaintiffs in error will be referred to as "plaintiff" and "defendants", respectively, as they appeared in the trial court. Plaintiff's purpose in commencing the action, on March 3, 1954, was to quiet its title to an undivided one-fourth of the minerals, hereinafter referred to as "royalty", in and under an 80-acre tract of land. Its asserted right to this relief was based upon the warranty of title contained in the mineral deed by which defendants' ancestor, S. C. Newbern, now deceased, and his then wife, conveyed the royalty to it in 1929. At that time, the tract of land, of which the royalty was an integral part, was owned by C. D. and Rilla Bussa, husband and wife, and was encumbered by a real estate mortgage, apparently held by one Cordelia Sandridge. Also, Bussa had a promissory note indebtedness at the Byars State Bank, and Newbern, as its president, had obtained, as security for said indebtedness and another debt Bussa owed the American State Bank of Rosedale, in which Newbern was a major stockholder, a quit claim deed to the land, naming him (Newbern) as grantee. It was while he was thus holding record title to the tract, that Newbern sold and conveyed, to plaintiff, the royalty here involved, and, with the sales proceeds, paid taxes due and delinquent thereon and the expenses of the sale, and credited the balance on Bussa's note at the Byars bank.

Thereafter, Cordelia Sandridge foreclosed her mortgage on the land and bid it in at the mortgage foreclosure sale, obtaining title by sheriff's deed, dated April 8, 1932. On the third day thereafter, Cordelia Sandridge and her husband conveyed the tract, by quit claim deed, to one C. B. Godard, who accepted title in his name for the two above-named banks in the proportion of an undivided one-half interest for each.

Thereafter, Mr. Newbern died in 1941, leaving his stock in the Byars State Bank in trust for the defendants herein. Apparently the testamentary trust, created in Newbern's will, continued to hold the stock until after the bank ceased to do business in 1944. Upon liquidation and distribution of said bank's assets, the trustees, under Newbern's will, conveyed the subject real estate to defendants on the basis of the bank stock they had inherited, as aforesaid. This vested in them a royalty interest in the land larger than the one-quarter interest originally conveyed by the said S. C. Newbern to plaintiff, while Newbern was holding title to the whole for the banks, as security for Bussa's indebtedness to them, as aforesaid.

In the answer defendants filed to plaintiff's petition, they alleged some of the facts above related, and pleaded that plaintiff's cause of action was barred by the fifteen-year statute of limitations, Tit. 12 O.S.1951 § 93, subds. (1) and (4), and 12 O.S.Supp. sec. 95, subds. 1, 3 and 7.

In its reply, plaintiff pleaded that when C. B. Godard acquired title to the property, as aforesaid, "he took and held title to an undivided $15/17$ths interest therein in trust for the use of S. C. Newbern and his wife, the defendant Leta Rue Newbern", and that thereby and thereupon, plaintiff's title to the undivided one-fourth royalty interest involved herein "re-vested in it by operation of law." Plaintiff further alleged, in substance, that upon Newbern's death, defendants succeeded to all of his right, title and interest.

After trial of the cause by the court, it entered judgment for plaintiff, and defendants thereafter perfected the present appeal.

The first proposition under which defendants seek reversal of the trial court's judgment is as follows:

"The Oklahoma After Acquired Statute (16 O.S.1951, sec. 17) is clear and unambiguous. By its plain language, it applies to a grantor only. The heirs of a grantor are not included in the statute; it has no application to them. Property acquired by an heir by purchase does not inure to the benefit of his ancestor's grantee."

Defendants assume, without conceding, that for the purpose of their arguments under this proposition, Newbern's execution and delivery of the mineral deed to plaintiff rendered him personally liable on the express and implied warranties of title, and against encumbrances, therein contained, even though he, at that time, as the evidence in this case discloses, was not the true owner. And, we think that this must be considered a legal actuality—rather than a mere assumption; and the fact that Newbern was not the real owner is irrelevant and immaterial in this case. In Weaver v. Drake, 79 Okl. 277, 193 P. 45, it was held:

"Whatever may be the form or nature of the conveyance used to pass real property, if the grantor sets forth on the face of the instrument, by way of recital or averment, that he is seised or possessed of a particular estate in the premises, and which estate the deed purports to convey, or, what is the same thing, if the seisin or possession of a particular estate is affirmed in the deed, either in express terms or by necessary implication, the grantor and all persons in privity with him shall be estopped from ever afterwards denying that he was so seised and possessed at the time he made the conveyance."

The sections of the statute defendants say are involved in the substantive issue of enforcibility against them, of Newbern's warranty of title are Tit. 16 O.S.1951 §§ 17 and 19. In apparent recognition of the fact that, by specific wording, the latter section makes such a warranty binding upon a grantor's heirs, as well as himself, defense counsel divide their argument, under their first proposition, into two parts, the first part dealing with section 19, and the last part with section 17.

■ In the first part, they say section 19 is the one dealing with express warranty, and then, by their argument, infer that this is the proper one under which to bring an action for damages for the breach of such a warranty. In the course of said argument, they maintain that such cause of action accrued to plaintiff when it was evicted, the date of which eviction they fix as April 6, 1932, when they say the sheriff's sale to Cordelia Sandridge was confirmed. On the basis of this hypothesis, the absence of any evidence that plaintiff made demand on Newbern at any time before his death in 1941, and their representation that, by doing so, it could probably have recovered its damage from him, counsel conclude that such cause of action on the warranty was barred five years after April 6, 1932, or in 1937. We find such argument and defendants' further argument concerning the absence of any evidence that plaintiff ever presented any claim for such damages against Newbern's estate, both inapplicable and ineffective as ground for reversing the trial court's judgment. This court's opinion in Marx v. Beard, Okl., 302 P.2d 132, clearly demonstrates that a cause of action, like plaintiff's for quieting title (instead of for damages for breach of such warranty) could not have accrued, if at all, before Newbern's death in 1941, and defendants' entry into the chain of title to the property by becoming vested with an interest therein.

■ In the second part of their argument under their first proposition, in which only section 17, supra, is considered (as if completely disassociated with section 19, supra) defendants rely on the fact that this section, unlike sec. 19, supra, makes no specific reference to a grantor's warranty being binding upon his heirs, but mentions only the grantor, himself. They

say that to hold plaintiff entitled to obtain from defendants, the mineral interest it obtained from the Newberns and later lost to Cordelia Sandridge by the mortgage foreclosure, would be erroneously extending the wording of section 17 by implication, to include wording not contained therein and to invoke a rule of law not contemplated thereby. We do not agree. The equitable doctrine of "estoppel by deed", is older than either section 17 or section 19, supra. See 58 A.L.R. 345, 346, and 168 A.L.R. 1149. It is applicable not only to the grantor in the deed, but also to those "in privity" with him. See the discussion in Weaver v. Drake, supra; 31 C.J.S. Estoppel § 46. We know of no jurisdiction, and defendants cite none, wherein persons who have obtained their title by reason of being heirs of a grantor are not considered as, and held to be, his privies, as concerns the applicability of the doctrine. 31 C.J.S. Estoppel §§ 52 and 53.

In subtle recognition of the general rule that such owners are estopped by their ancestor's warranty from asserting their after-acquired title against his grantee, *only where they claim through said grantor,* and that the doctrine does not apply where they claim by purchase, or through an independent title (31 C.J.S. Estoppel § 54, p. 230) defense counsel assert that the fact that their clients acquired their mineral interest "in exchange for or in liquidation of bank stock presents the same situation as if they had purchased the interest with money received from the estate." Based upon the latter premise, they say that to hold Newbern's warranty binding upon them would be tantamount to laying down a rule that any heir, immediate or remote, who obtains "property *or money* from the estate of such a grantor would be disqualified to take title on the penalty of having any title he might take inure to the benefit of his ancestor's grantee." (Emphasis ours.) Defendants' assumption that they are in the same position, concerning applicability of the doctrine involved, as

if they had purchased the mineral interest with money they had inherited from the S. C. Newbern Estate is unsound. If this had occurred, it might well be argued that they acquired the *"independent" title* of C. B. Godard *by purchase.* But this was not the case. Having received the mineral interest in exchange for the bank stock left them by S. C. Newbern, we do not think they are in any different position than if they had taken said interest from his estate in exchange for, or in lieu of, Newbern's devise to them of other realty. In this connection, see Carson v. New Bellevue Cemetery, 104 Pa. 575, and 31 C.J.S. Estoppel § 53, supra, at note 29. We, therefore, hold that S. C. Newbern's warranty in the mineral deed he and his wife executed and delivered to plaintiff was binding on the defendants to the same extent that it would have been if they had received the mineral interest itself by inheritance from Newbern.

Defendants' proposition II, is as follows:

"Twenty-two years elapsed after Southland was evicted by sheriff's sale before this action was commenced. The fifteen-year statute of limitations was pleaded and is a bar to the action."

In view of what we have already said concerning the time when plaintiff's cause of action accrued, there can be no merit to the quoted proposition. As hereinbefore indicated, plaintiff's cause of action did not accrue against defendants until the occurrence of some event whereby they entered the chain of title to the property. Under no circumstances could such have occurred in this case prior to S. C. Newbern's death in 1941. Since, as hereinbefore noted, this action was commenced in 1954, it is obvious that the fifteen-year period of limitations had not completely elapsed when the action was commenced.

As we have found in the arguments presented for that purpose, no cause for reversing the judgment of the trial court, said judgment is hereby affirmed.

CORN, V. C. J., and HALLEY, JOHN-SON, WILLIAMS and CARLILE, JJ., concur.

WELCH, C. J., and JACKSON, J., dissent.