2005 OK 41

John R. SULLIVAN, an Individual, Plaintiff/Appellant,

v.

BUCKHORN RANCH PARTNERSHIP, a Texas General Partnership; Joe P. Sullivan, an Individual; Mark J. Sullivan, an Individual; BH Ranch, Ltd., a Texas Limited Partnership; Grand Prairie State Bank, a Texas State Banking Institution, Defendants/Appellees.

No. 100,618.

Supreme Court of Oklahoma.

June 14, 2005.

Jon R. Running, Tulsa, OK, for Plaintiff/Appellant.

Phil S. Hurst, Sulphur, OK, for Defendants/Appellees Buckhorn Ranch Partnership, Joe P. Sullivan, and Mark Sullivan.

Mark W. Kuehling, Oklahoma City, OK, for Defendants/Appellees BH Ranch, Ltd., and Grand Prairie State Bank.

KAUGER, J.

¶ 1 Title 11 U.S.C.A. § 554 [1] of the United States Bankruptcy Code governs abandonment of bankruptcy estate property. It allows the court to order the trustee to abandon any estate property that is burdensome or of inconsequential value and benefit to the estate.[2] When an asset has been abandoned by the trustee, it is no longer part of the bankruptcy estate. It reverts to its pre-bankruptcy status as if no bankruptcy petition had been filed, and it is removed from

---

**1.** Title 11 U.S.C.A. § 554 provides:

"(a) After notice and a hearing, the trustee my abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate.

(b) On request of a party in interest and after notice and a hearing, the court may order the trustee to abandon any property of the estate that is burdensome to the estate or that is inconsequential value and benefit to the estate.

(c) Unless the court orders otherwise, any property scheduled under section 521(1) of this title not otherwise administered at the time of the closing of a case is abandoned to the debtor and administered for purposes of section 350 of this title.

(d) Unless the court orders otherwise, property of the estate that is not abandoned under this section and that is not administered in the case remains property of the estate."

**2.** *Id.*

the jurisdiction of the bankruptcy court.[3] The issues presented are: 1) whether the cause is time barred because property conveyed after it has been abandoned from bankruptcy court constitutes a "judicial sale" under 12 O.S.2001 § 93;[4] and 2) if timely filed, whether summary judgment is precluded by the existence of material issues of fact concerning the application of equitable defenses. We hold that: 1) property conveyed after the bankruptcy court enters an order abandoning it from the bankruptcy estate does not qualify as a "judicial sale" under 12 O.S.2001 § 93; and 2) genuine issues of material fact concerning the application of equitable defenses preclude summary judgment.

## FACTS

¶ 2 This cause concerns a Texas family's dispute over the establishment of title to real estate located in Oklahoma. On September 19, 1985, the plaintiff/appellant, John R. Sullivan (Sullivan), a Texas resident, acquired title to 3,200 acres of real property, commonly known as the Buckhorn Ranch (ranch), in Murray County, Oklahoma.[5] The ranch was secured by a mortgage in favor of Prudential Insurance Company of America (Prudential).

¶ 3 In 1991, Sullivan filed for bankruptcy in the Northern District of Texas. On August 12, 1991, the bankruptcy court issued an order abandoning the ranch from the bankruptcy estate, finding that no equity existed for the benefit of the estate over and above the lien held by Prudential. On March 13, 1992, the bankruptcy court entered an order holding that the sale of the ranch and release of the mortgage lien for $758,600.00 could proceed without court approval and that it would not violate the automatic stay previously entered by the court.

¶ 4 On March 16, 1992, Sullivan and his wife divided the 3,200 acre ranch and executed two warranty deeds. Sullivan sold half of the ranch (about 1,600 acres) to the Ardmore Institute of Health (Ardmore) for $738,824.80. The Ardmore deed was recorded March 18, 1992. The second deed conveyed the other half of the ranch to Buckhorn Ranch Partnership I, a Texas *limited partnership* (Partnership I). The Partnership I deed was recorded July 8, 1992. Partnership I did not exist when the conveyance was made or at the time the deed was recorded, and apparently has never existed.

¶ 5 The settlement statement relating to the Ardmore sale reflects that Sullivan was approximately $75,000.00 short of conveying the property free and clear of all mortgage liens, brokers fees, taxes, and other charges. According to Sullivan, his father, Walter Sullivan (father) provided the money[6] necessary to complete the Ardmore transaction, allowing him to pay the mortgage and obtain a

---

3. *In re Bray*, 288 B.R. 305, 306 (S.D. Ga. 2001); *In re Argiannis*, 156 B.R. 683, 687 (M.D.Fla. 1993); *In re Dewsnup v. Timm*, 908 F.2d 588, 590 (10th Cir.1990), *cert. granted.* 498 U.S. 1081, 111 S.Ct. 949, 112 L.Ed.2d 1038, *affirmed* 502 U.S. 410, 112 S.Ct. 773, 116 L.Ed.2d 903; *In re McGowan*, 95 B.R. 104, 105 (N.D.Iowa 1988) [Nor does abandonment constitute a sale or exchange that could trigger tax liability.]. Normally, abandonments, once completed, are irrevocable even if there is a subsequent discovery that the property has greater value than previously believed. *In re Figlio*, 193 B.R. 420, 422 (D.N.J.1996); *In re McGowan*, this note, supra; *In re Wornell*, 70 B.R. 153, 154 (W.D.Mo.1986).

4. Title 12 O.S.2001 § 93 provides in pertinent part:

   "Action for the recovery of real property, or for the determination of any adverse right or interest therein, can only be brought within the periods hereinafter prescribed, after the cause of action shall have accrued, and at no other time thereafter:

   (1) An action for the recovery of real property sold on execution or for the recovery of real estate partitioned by judgment in kind, or sold, or conveyed **pursuant to** partition proceedings, or **other judicial sale,** or an action for the recovery of real estate distributed under decree of district court ... within five (5) years after the date of the recording of the date made in pursuance of the sale or proceeding ...
   (4) An action for the recovery of real property not hereinbefore provided for, within fifteen (15) years...." (Emphasis supplied.)

5. The deed dated September 19, 1985, lists the grantors as Grace E. Jones, a widow; Melborn C. Jones and Barbara F. Jones, husband and wife; and Harold Lavon Jones and Macella A. Jones, one and the same person as Marcella A. Jones, husband and wife.

6. On March 13, 1992, the father, who is not a named defendant in this cause, issued a cashiers check in the amount of $74,932.84 to Carter County Abstract Company, Inc.

release. Sullivan also insists that, at the time of the conveyance, he and his father had intended to form Partnership I, but never did.

¶ 6 On July 17, 1992, the father and Sullivan's brother, Joe Sullivan (J. Sullivan), entered into a partnership agreement forming a *general partnership* known as the Buckhorn Ranch Partners (Partnership II). J. Sullivan owned 15% and the father owned 85% of the general partnership. The stated purpose of Partnership II was to own, manage, operate, develop, sell and dispose of real property located in Murray County, Oklahoma. The Partnership II agreement was filed in Murray County, Oklahoma, on December 7, 1993. On December 12, 1993, the Partnership II secured a mortgage on the ranch from Sulphur Community Bank.

¶ 7 On October 4, 2001, Sullivan filed an affidavit of beneficial interest in the ranch in Murray County. About the same time, the father assigned his Partnership II interest to another of his sons and Sullivan's brother, Mark Sullivan (M. Sullivan/J.Sullivan and M. Sullivan, collectively, the brothers). On March 26, 2002, Partnership II conveyed its interest in the ranch to BH Ranch Ltd, a Texas limited partnership (BH Ranch) by special warranty deed.[7] The deed was recorded April 1, 2002, and secured by a mortgage from the Grand Prairie State Bank, a Texas Bank (Bank), filed the same day.

7. The March 26, 2002, deed provides in pertinent part:

"THIS SPECIAL WARRANTY DEED is made this 26th day of March 2002, between **BUCKHORN RANCH PARTNERSHIP,** a Texas general partnership, erroneously identified in deed recorded in Volume 369, Page 110 of the Deed Records of Murray County, Oklahoma as Buckhorn Ranch Partnership I, a Texas limited partnership, by and through its general partners Joe P. Sullivan and Mark J. Sullivan, assignee and successor-in-interest to Walt Sullivan (herein the 'Grantor'), and **BH RANCH, LTD.,** a Texas limited partnership (herein the 'Grantee') ..." (Emphasis in original.).

8. The original petition is not included in the summary disposition record on appeal; however, an amended petition dated December 18, 2002, was included. The response to Sullivan's motion for summary judgment filed by BH Ranch and the Bank indicated that the lawsuit was initially filed on November 21, 2002.

¶ 8 On November 21, 2002,[8] Sullivan filed a quiet title and ejectment action against Partnership II, the brothers, the BH Ranch, and the Bank, seeking free and clear title to the half of the ranch which was the subject of the July, 8, 1992, Partnership I conveyance. On June 9, 2003, Sullivan filed a motion for summary judgment, arguing that because the grantee, Partnership I, did not exist and was incapable of taking title, the conveyance was void.

¶ 9 BH Ranch counterclaimed for reformation, contending the deed merely contained a scrivener's error. On June 23, 2003, the brothers and Partnership II asserted that summary judgment would be premature because disputed material fact questions existed regarding whether: 1) the deed contained a mistake/scrivener's error which should have referred to Partnership II, a company which was formed before the deed in question was executed and before a formalized written partnership agreement was entered; and 2) Sullivan was estopped to deny the validity of the conveyance pursuant to 16 O.S.2001 § 11 because the benefits of the transaction had been received.[9] The BH Ranch and the Bank argued that, although summary judgment would be premature regarding the scrivener's error issue, Sullivan's claims are barred by the statute of limitations, estoppel by deed and/or ratification,[10] equitable estoppel, and laches.

9. Title 16 O.S.2001 § 11 provides:

"Any person or corporation, having knowingly received and accepted the benefits or any part thereof, of any conveyance, mortgage or contract relating to real estate shall be concluded thereby and estopped to deny the validity of such conveyance, mortgage or contract, or the power or authority to make and execute the same, except on the ground of fraud; but this section shall not apply to minors or persons of unsound mind who pay or tender back the amount of such benefit received by themselves."

10. Although the BH Ranch and the bank use the term "estoppel by deed" it appears that their argument falls under estoppel to question the truth of the recital in the deed prohibited by 16 O.S.2001 § 11, see note 9 supra, rather than the doctrine of after-acquired title, also commonly known as "estoppel by deed." See, *Wood v. Sympson,* 1992 OK 90, ¶ 11, 833 P.2d 1239; *Lucus v. Cowan,* 1960 OK 260, ¶ 6, 357 P.2d 976;

¶ 10 The BH Ranch and the Bank attached various exhibits in support of their argument which included: 1) the Partnership II agreement and a December 9, 1993, mortgage on the ranch taken by Partnership II; 2) documentation of Sullivan's October 19, 2000, criminal probation relating to an offense of "False Statement and Aiding and Abetting;" and 3) documents from 2000–2001, which they allege indicate that Sullivan attempted to purchase interests in the ranch and/or various partnerships of the father and/or the brothers.

¶ 11 In a supplemental filing, the BH Ranch and the Bank also included: 1) a June 21, 2003, affidavit of the father and J. Sullivan stating that the deed contained a scrivener's error and that the Partnership II was formed prior to the conveyance and before the written partnership agreement was formalized; and 2) a schedule of expenses from March 16, 1992, indicating that the father issued the cashiers check for the purchase of the ranch.

¶ 12 Sullivan responded with an affidavit from the attorney who prepared the deed indicating that Sullivan had planned to form Partnership I and would be a partner. Sullivan claimed to have paid the real estate taxes on the ranch and he also submitted documentation showing that he paid operating expenses of the ranch including salaries, repair costs, and other day-to-day expenses. He also explained that: 1) any discussions of purchasing the ranch or various partnerships were only a small part of broad discussions among Sullivan family members who were attempting to settle various disputes relating

to numerous real estate properties; and 2) he had no reason to bring suit until Partnership II attempted to sell the ranch to BH Ranch.

¶ 13 At the July 11, 2003, summary judgment hearing, the trial court, Honorable John H. Scaggs, determined there was no substantial controversy as to any material fact, and that Sullivan's claims were barred by estoppel, laches, and the statute of limitations. Finding that the 1992 deed contained a mistake, the court reformed the deed to reflect Walter Sullivan as the name of the grantee "per constructive trust" and granted summary judgment to the brothers dismissing all of Sullivan's claims.

¶ 14 The trial court also awarded the brothers costs and attorney fees because it determined that Sullivan's claims were frivolous and motivated by fraud, malice, and oppression. On December 15, 2003, Sullivan filed a motion for new trial which was overruled on March 25, 2004.[11] Sullivan appealed and the Court of Civil Appeals affirmed. We granted certiorari on February 22, 2005.

**I.**

¶ 15 **PROPERTY CONVEYED AFTER THE BANKRUPTCY COURT ENTERS AN ORDER ABANDONING IT FROM THE BANKRUPTCY ESTATE DOES NOT QUALIFY AS A "JUDICIAL SALE" UNDER 12 O.S.2001 § 93.**

¶ 16 BH Ranch, and the bank contend that Sullivan's action [12] falls outside the

*Grisham v. Southland Royalty Co.,* 1958 OK 248, ¶ 0, 332 P.2d 1099; *Weaver v. Drake,* 1920 OK 328, ¶ 0, 193 P. 45.

11. The order overruling the plaintiff's motion for new trial was filed March 29, 2003. Attached to Sullivan's motion for new trial were additional exhibits which were not before the trial court when it considered the motion for summary judgment. As part of the order overruling the new trial motion, the new exhibits were stricken by the trial judge and are not considered on appeal.

12. The action commenced by Sullivan was brought as a party ousted of possession, but claiming title and right of possession. A party

having title to property and claiming right of possession obtains relief by an action at law in ejectment provided by 12 O.S.2001 § 1142. *Krosmico v. Pettit,* 1998 OK 90, ¶ 2, 968 P.2d 345; *Todoroff v. Burton,* 1985 OK 74, ¶ 7, 719 P.2d 456. Title 12 O.S.2001 § 1142 provides:

"In actions for the recovery of real property, it shall be necessary for the plaintiff to set forth in detail the facts relied upon to establish his claim, and to attach to his petition copies of all deeds or other evidences of title, as in actions upon written contracts; and he must establish the allegations of his petition, whether answer be filed or not."

In addition, Sullivan requests that title to the property be quieted in him. An equitable action to quiet title is brought under 12 O.S.2001

five year statute of limitations contained in 12 O.S.2001 § 93(1)[13] because the ranch was involved in bankruptcy and sold pursuant to an abandonment order. They insist that the ranch was sold pursuant to a "judicial sale" as provided by the statute. Sullivan argues that the five year time limit is inapplicable because a bankruptcy court's abandonment order does not constitute a "judicial sale" and his action is otherwise timely. It is undisputed that the ranch was abandoned by the bankruptcy court prior to the conveyances to Ardmore and Partnership I.

¶ 17 Title 12 O.S.2001 § 93 governs actions for the recovery of real property or for the determination of an adverse right. Section 93 provides in pertinent part:

"Action for the recovery of real property, or for the determination of any adverse right or interest therein, can only be brought within the periods hereinafter prescribed, after the cause of action shall have accrued, and at no other time thereafter: (1) An action for the recovery of real property sold on execution or for the recovery of real estate partitioned by judgment in kind, or sold, or conveyed **pursuant to** partition proceedings, or **other judicial sale,** or an action for the recovery of real estate distributed under decree of district court ... within five (5) years after the date of the recording of the date made in pursuance of the sale or proceeding ...

(4) An action for the recovery of real property not hereinbefore provided for, within fifteen (15) years...." (Emphasis supplied.)

¶ 18 Title 11 U.S.C.A. § 554[14] of the United States Bankruptcy Code governs abandonment of bankruptcy estate property. It allows the court to order the trustee to abandon any estate property which is burdensome or of inconsequential value and benefit to the estate.[15] When an asset has been abandoned by the trustee, it is no longer part of the bankruptcy estate. It reverts to its pre-bankruptcy status as if no bankruptcy petition were filed and it is removed from the jurisdiction of the bankruptcy court.[16]

---

§ 1141. *Krosmico v. Pettit,* this note, supra; *Todoroff v. Burton,* this note, supra. Title 12 O.S. 2001 § 1141 provides in pertinent part:

"A. An action may be brought by any person in possession, by himself or tenant, of real property against any person who claims an estate or any interest therein adverse to the person bringing the action for the purpose of determining such adverse estate or interest, and such action may be joined with an action to recover possession of such real property by any person not in possession. The person or persons bringing such action shall not be required to allege the particular estate or interest claimed adversely by the person or persons against whom the action is brought, but may allege that the defendants' claim is adverse to that of the plaintiffs...."

In the trial court and on appeal, Sullivan's claims were argued as being barred by the statute of limitations of 12 O.S.2001 § 93(1), see note 4, supra. The exact nature and extent of Sullivan's possession of the property over the years, and that of the opposing parties is not clear from the record. The defense of the statute of limitations is treated as an affirmative defense, rather than as a jurisdictional question, and is not independently reviewed by the Court. *Lamson & Sessions v. Doyle,* 2002 OK 89, ¶ 9, 61 P.3d 215. Accordingly, we neither accept nor reject the correctness of the parties views, and our application of the statute of limitations is based merely upon how today's controversy was framed by the parties.

13. Title 12 O.S.2001 § 93(1), see note 4, supra.

14. Title 11 U.S.C.A. § 554 provides:

"(a) After notice and a hearing, the trustee my abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate.

(b) On request of a party in interest and after notice and a hearing, the court may order the trustee to abandon any property of the estate that is burdensome to the estate or that is inconsequential value and benefit to the estate.

(c) Unless the court orders otherwise, any property scheduled under section 521(1) of this title not otherwise administered at the time of the closing of a case is abandoned to the debtor and administered for purposes of section 350 of this title.

(d) Unless the court orders otherwise, property of the estate that is not abandoned under this section and that is not administered in the case remains property of the estate."

15. *Id.*

16. *In re Bray,* see note 3, supra; *In re Argiannis,* see note 3, supra; *In re Dewsnup v. Timm,* see note 3, supra; *In re McGowan,* see note 3, supra. Normally, abandonments, once completed, are irrevocable even if there is a subsequent discovery that the property has greater value than previously believed. *In re Figlio,* see note 3, supra; *In re McGowan,* note 3, supra; *In re Wornell,* see note 3, supra.

¶ 19 Because the abandoned property is not property administered by the estate and jurisdiction over the property is relinquished,[17] the bankruptcy court lacks authority to order a sale of the property. Accordingly, we are unconvinced that, under such circumstances, a post-abandonment property conveyance by the debtor qualifies as a "judicial sale" under 12 O.S.2001 § 93.[18]

## II.

¶ 20 **GENUINE ISSUES OF MATERIAL OF FACT CONCERNING THE APPLICATION OF EQUITABLE DEFENSES PRECLUDE SUMMARY JUDGMENT.**

¶ 21 This cause is an appeal from the trial court's judgment granting summary judgment against Sullivan and dismissing his claims. Sullivan argues that because the disputed deed attempted to convey property to a non-existing legal entity, it is void and he is entitled to the property. The brothers and Partnership II contend that: 1) Sullivan is estopped to deny the validity of his conveyance pursuant to 16 O.S.2001 § 11;[19] and 2) even if Sullivan were not estopped, material fact questions exist concerning whether the disputed deed contained a scrivener's error.

¶ 22 The bank and BH Ranch assert that: 1) Sullivan is barred by the application of equitable doctrines such as estoppel and/or ratification and laches from asserting any interest in the deed; and 2) the deed should be reformed to reflect the correct grantee. Sullivan insists that the asserted equitable defenses are inapplicable.

¶ 23 Summary judgment is proper only when the pleadings, affidavits, depositions, admissions or other evidentiary material establish that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law.[20] All conclusions drawn from the evidentiary materials submitted to the trial court are viewed in the light most favorable to the party opposing the motion.[21] Even when basic facts are undisputed, motions for summary judgment should be denied, if under the evidence, reasonable persons might reach different conclusions from the undisputed facts.[22]

### a. Statutory Estoppel under 16 O.S.2001 § 11.

¶ 24 We agree with Sullivan, that there must be a grantor and a grantee to be a valid deed, and that the grantee must have a legal existence.[23] An attempted conveyance to a non-existing legal entity may, like an attempted conveyance to a fictitious person, be of no effect and void —— passing no title and conveying no interest whatsoever.[24]

17. *In the Matter of Bray*, see note 3, supra; *In re Argiannis*; see note 3, supra; *In re Dewsnup v. Timm*, see note 3, supra.

18. Title 12 O.S.2001 § 93, see note 4, supra. We note that in this cause, the bankruptcy court also issued an order finding that Sullivan's sale of the ranch would not violate the automatic stay previously issued by the court. Had the sale violated the automatic stay, it would have been void. See, *United States through Farmers Home Administration v. Hobbs*, 1996 OK 77, ¶ 5, 921 P.2d 338.

19. Title 16 O.S.2001 § 11, see note 9, supra.

20. *Bogart v. Caprock Communications Corp.*, 2003 OK 38, ¶ 20, 69 P.3d 266; *Prichard v. City of Oklahoma City*, 1999 OK 5, ¶ 19, 975 P.2d 914; *Krokowski v. Henderson Nat'l Corp.*, 1996 OK 57, ¶ 8, 917 P.2d 8.

21. *Green v. Harris*, 2003 OK 55, ¶ 11, 70 P.3d 866; *K & K Food Services, Inc. v. S & H, Inc.*, 2000 OK 31, ¶ 16, 3 P.3d 705; *Phelps v. Hotel*

*Management, Inc.*, 1996 OK 114, ¶ 7, 925 P.2d 891.

22. *Green v. Harris*, see note 21, supra; *Prichard v. City of Oklahoma City*, see note 20, supra; *Carris v. John R. Thomas & Associates*, 1995 OK 33, ¶ 16, 896 P.2d 522

23. *Jones v. Alpine Investments, Inc.*, 1987 OK 113, ¶ 13, 764 P.2d 513 *Polk v. Unknown Trustees, Successors, & Assigns of Three–In–One Oil & Gas Co.*, 1956 OK 154, ¶ 7, 298 P.2d 432; *James v. Unknown Trustees, Etc.*, 1950 OK 202, ¶ 0, 220 P.2d 831. See also, *City of Ardmore v. Knight*, 1954 OK 101, ¶ 7, 270 P.2d 325 [Must be grantee who is capable of taking and holding title in his own right or as trustee.].

24. A grantor is not necessarily estopped from showing that the supposed legal entity did not exist to avoid the deed. *Jones v. Alpine Investments, Inc.*, see note 23, supra; *Polk v. Unknown Trustees, Successors, & Assigns of Three–In–One Oil & Gas Co.*, see note 23, supra; *James v.*

Assuming *arguendo* that the conveyance was an attempt to pass title to a non-existing entity, rather than a deed containing a mere scrivener's error,[25] an initial determination must be made as to whether Sullivan is precluded from challenging the deed under 16 O.S.2001 § 11.[26]

¶ 25 Title 16 O.S.2001 § 11 provides that one may be estopped to deny a transaction affecting real estate if the benefits of the transaction have been received. Section 11 provides:

"Any person or corporation, having knowingly received and accepted the benefits or any part thereof, of any conveyance, mortgage or contract relating to real estate shall be concluded thereby and estopped to deny the validity of such conveyance, mortgage or contract, or the power or authority to make and execute the same, except on the ground of fraud; but this section shall not apply to minors or persons of unsound mind who pay or tender back the amount of such benefit received by themselves."

¶ 26 The statute has been held to apply to persons attempting to challenge allegedly invalid transactions if the challenger accepted and retained the benefits of the transaction with full knowledge of the purpose and source of such benefits [27] ——— regardless of whether the transaction was alleged to be void, or merely voidable.[28] In *Carlisle v. National Oil & Development Co.*, 1924 OK 66, ¶ 5, 234 P. 629, a case involving an allegedly void oil and gas lease, the court noted that:

"... Much confusion has arisen due to the application of the statutes above quoted to voidable transactions in some instances

Unknown Trustees, Etc., see note 23, supra. The existence of a corporation or its corporate powers is ordinarily permitted to only be called into questioned by the state. However, the doctrine of estoppel to deny a corporate existence may not be invoked, unless the corporation had at least a *de facto* existence. *James v. Unknown Trustees, Etc.*, see note 23, supra.

25. Because we determine that summary judgment was premature, we express no opinion on whether the deed in question was intended as a conveyance to a non-existing legal entity or whether it was in fact a mere unintentional scrivener's error mistakenly conveying it to the wrong entity.

26. Title 16 O.S.2001 § 11, see note 9, supra.

27. Although caselaw mostly refers to "knowledge" as a "knowledge of all the facts," in *Mayer v. Pettigrew*, 1954 OK 202, ¶ 9, 272 P.2d 411, the Court explained that knowingly the statute means "with knowledge of the purpose and source of such benefits." *Mayer*, involved a litigant who was not estopped to challenge the validity of a deed where the litigant thought the payments were tax refunds rather than payments for the land.

28. *Burke Aviation Corp. v. Alton Jennings Co.*, 1962 OK 217, ¶ 15, 377 P.2d 578 [Estoppel applied to vendor accepting benefits under void contract.]; *Allred v. Royalty Owners Ass'n*, 1950 OK 69, ¶ 15, 216 P.2d 281[After receiving and retaining benefits, estopped to deny deed.]; *Galloway v. Loffland*, 1930 OK 197, ¶ 15, 289 P. 774 [Estoppel applied to challenge validity of conveyance where party attacking knowingly received and accepted the benefits and proceeds.];

*McMillan v. Pawnee Petroleum Corp.*, 1931 OK 472, ¶ 31, 1 P.2d 775 [Grantors who accepted benefit of conveyance to foreign corporation which had not complied with domestication statutes, estopped to deny capacity of corporation to take title.]; *Hull v. Teafatiller*, 1930 OK 86, ¶ 0, 286 P. 799 [Party who with knowledge voluntarily retained for over two years pro rata share of partition sale proceeds affirmed the validity of the judgment.]; *Key v. Midland Savings & Loan Co.*, 1930 OK 409, ¶ 12, 291 P. 573 [Evidence that mortgagor knowingly accepted proceeds of mortgage admissable to establish estoppel to deny validity of mortgage.]; *Gypsy Oil Co. v. Karns*, 1924 OK 1057, ¶ 0, 236 P. 608 [One who conveyed working interest in nonassignable lease was estopped because accepted benefits for several years during time impediment to assignability was removed.]; *Yeldell v. Bank of Elmer*, 1923 OK 864, ¶ 3, 221 P. 422 [Plaintiff who insisted on full satisfaction of judgment was estopped to challenge the validity of alleged void sheriff's sale.]; *Avey v. Van Voorhis*, 1914 OK 196, ¶ 12, 140 P. 615 [Son who kept proceeds of sale for 11 years before challenging alleged void tax deed was estopped to challenge deed.]. But see, *Miller v. Robberson*, 1951 OK 21, ¶ 8, 227 P.2d 654 [Estoppel inapplicable to defendant challenging alleged void tax deed where no benefit was received.]; *Standard Savings & Loan Ass'n v. Acton*, 1936 OK 827, ¶ 11, 63 P.2d 15 [Statute inapplicable to husband who was not a part of the challenged transaction.]; *Moroney v. Tannehill*, 1923 OK 799, ¶¶ 20–21, 215 P. 938 [Inapplicable to land of minors sold by guardian, if tender back purchase price with interest and permanent improvements. Nor is void sale of restricted Indian lands subject to ratification, approval, adoption or any other theory because such conveyance cannot be cured of its infirmity.].

and to void transactions in others, and the use of the word 'estoppel' in connection with such transactions in other cases.... In all of the cases referred to, however, the parties were denied relief because they had accepted the benefits of the contracts, whether void or voidable, with full knowledge of the facts and at the time when the party so accepting was under the law fully competent and capable of contracting for himself. It therefore does not matter whether the transaction be referred to as an adoption, ratification, or estoppel, as the effect of these holdings, taken together, is to prevent a party from asserting the invalidity of a contract, when such party has accepted the benefits of the contract with full knowledge of the facts."

¶ 27 Here, the evidentiary materials show that Sullivan's father issued a check for nearly $75,000.00, or the exact amount which allowed Sullivan to sell half of the ranch free and clear for $738,824.80. The inference from the figures is that *if* Sullivan intended to sell the reminder of the ranch to his father or some other entity for that matter, he did so for nearly 1/10 of its worth. Sullivan insists that the money was a loan and that he and his father intended to create Partnership I, but never did. It appears that there is no record of the existence of such an entity.

¶ 28 In support of his allegations, Sullivan includes documentation to show that: 1) he intended to create Partnership I; 2) he continued to assert ownership of the ranch after the conveyance; and 3) neither Partnership I, nor Partnership II existed when the attempted conveyance was made. The facts, taken together, clearly raise issues of material fact regarding whether Sullivan re-

ceived the benefits of the transaction or even made the conveyance with full knowledge of the purpose and source of the benefits. The brothers and the other defendants also submit documentation to contradict Sullivan's allegations, but nothing dispositive of the material fact issues. We determine that because the evidentiary materials are clearly not dispositive of the material questions of fact regarding the application of 16 O.S.2001 § 11,[29] the trial court entered summary judgment prematurely.

### b. Equitable Estoppel and Laches.

¶ 29 BH Ranch and the bank contend that because of the equitable nature[30] of the proceedings, Sullivan is also barred by equitable estoppel and laches for waiting over 10 years to bring his suit and for acting inconsistently with a claim of ownership. Sullivan counters that equitable estoppel and laches are inapplicable because: 1) he asserted ownership of the ranch after the conveyance; 2) he has not acted inconsistently in regard to a claim of ownership; and 3) it was not necessary to bring an action until he discovered Partnership II was attempting to sell the property.

¶ 30 The statutes do not purport to define all classes of estoppel.[31] Equitable estoppel is a legal concept which bars a party from alleging or denying certain rights which might otherwise have existed because of the party's voluntary conduct.[32] It is used to prevent injustice and should not be used to work a positive gain to a party.[33] It requires good faith reliance upon a representation or position by the party asserting estoppel.[34]

---

**29.** Title 16 O.S.2001 § 11, see note 9, supra.

**30.** An action to quiet title is one of equitable cognizance. *Caywood v. January,* 1969 OK 87, ¶ 17, 455 P.2d 49. An action to rescind or cancel an instrument of conveyance is of equitable cognizance. *Easterling v. Ferris,* 1982 OK 99, ¶ 16, 651 P.2d 677; *Clovis v. Clovis,* 1969 OK 170, ¶ 5, 460 P.2d 878; *Chapman v. Chapman,* 1965 OK 48, ¶ 6, 400 P.2d 831.

**31.** *Lacy v. Wozencraft,* 1940 OK 383, ¶ 12, 105 P.2d 781.

**32.** *Hoar v. Aetna Casualty & Surety Co.,* 1998 OK 95, ¶ 13, 968 P.2d 1219; *Apex Siding & Roofing Co. v. First Federal Savings & Loan Assoc. of Shawnee,* 1956 OK 195, ¶ 6, 301 P.2d 352.

**33.** *First State Bank v. Diamond Plastics Corp.,* 1995 OK 21, ¶ 40, 891 P.2d 1262; *Cleveland Trust Co. v. State ex rel. Hunt,* 1976 OK 135, ¶ 9, 555 P.2d 594;

**34.** *Hoar v. Aetna Casualty & Surety Co.,* see note 32, supra; *First State Bank v. Diamond Plastics Corp.,* see note 33, supra.

Estoppel is an affirmative plea which must be proved by the party asserting it.[35]

■ ¶31 The essential elements necessary to establish equitable estoppel are: first, there must be a false representation or concealment of facts; second, it must have been made with actual or constructive knowledge of the real facts; third, the party to whom it was made must have been without knowledge, or the means of discovering the real facts; fourth, it must have been made with the intention that it should be acted upon; and fifth, the party to whom it was made relied on, or acted upon it to his or her detriment.[36]

■ ¶32 Laches is an equitable defense to stale claims.[37] There is no arbitrary rule for when a claim becomes stale or what delay is excusable.[38] Application of the doctrine is discretionary depending on the facts and circumstances of each case as justice requires.[39] As an affirmative defense, the party claiming the doctrine's benefit has the burden of proof.[40]

■ ¶33 The party invoking the laches defense must show unreasonable delay coupled with knowledge of the relevant facts resulting in prejudice.[41] Delay is deemed excusable if it is induced or contributed to by the adverse party.[42] Furthermore, laches is not a defense to one lacking notice of a right to proceed or a cause of action[43] —— the elements of laches are simply not met when there is an absence of knowledge and affirmative acts to mislead.[44] Estoppel and the equitable defense of laches each share the elements of delay and resulting prejudice to the other party.[45] Equitable estoppel as well as laches must be determined by the circumstances in each case and according to right and justice.[46]

■ ¶34 From the record we do not believe that the trial court had any basis from which to grant summary judgment on either laches or equitable estoppel. Both equitable doctrines share elements of knowledge. Both sides to this cause had actual knowledge that the Partnership I deed referred to either the wrong entity, or a non-existent company,[47] yet neither side acted any earlier than Sullivan to remove an apparent cloud of title. Nor do we believe that a

**35.** *First State Bank v. Diamond Plastics Corp.*, see note 33, supra.

**36.** *Burdick v. Independent School Dist. No., 52 of Oklahoma County*, 1985 OK 49, ¶13, 702 P.2d 48; *Midland Mortg. Co. v. Sanders England Investments*, 1984 OK 10, ¶6, 682 P.2d 748; *Walker & Withrow, Inc. v. Haley*, 1982 OK 107, ¶7, 653 P.2d 191.

**37.** *Smith v. Baptist Foundation of Oklahoma*, 2002 OK 57, ¶8, 50 P.3d 1132; *Sooner Federal Savings & Loan Ass'n v. Smoot*, 1995 OK 31, ¶21, 894 P.2d 1082; *Olansen v. Texaco, Inc.*, 1978 OK 139, ¶34, 587 P.2d 976.

**38.** *Smith v. Baptist Foundation of Oklahoma*, see note 37, supra; *Phelan v. Roberts*, 1938 OK 139, ¶14, 77 P.2d 9; *Nickel v. Janda*, 1923 OK 944, ¶0, 242 P. 264.

**39.** *Smith v. Baptist Foundation of Oklahoma*, see note 37, supra; *Olansen v. Texaco, Inc.*, see note 37, supra; *Marshall v. Amos*, 1968 OK 86, ¶0, 442 P.2d 500;

**40.** *Smith v. Baptist Foundation of Oklahoma*, see note 37, supra; *Sooner Federal Savings & Loan Ass'n v. Smoot*, see note 37, supra; *Nadel v. Zeligson*, 1952 OK 278, ¶17, 252 P.2d 140.

**41.** *Smith v. Baptist Foundation of Oklahoma*, see note 37, supra; *Clark v. Unknown Heirs*, 1989 OK 145, ¶4, 782 P.2d 1384; *Phelan v. Roberts*, see note 38, supra.

**42.** *Smith v. Baptist Foundation of Oklahoma*, see note 37, supra; *Walker v. Oak Cliff Volunteer Fire Protection Dist.*, 1990 OK 31, ¶15, 807 P.2d 762; *Nadel v. Zeligson*, see note 40, supra.

**43.** *Smith v. Baptist Foundation of Oklahoma*, see note 37, supra; *Walker v. Oak Cliff Volunteer Fire Protection Dist.*, see note 42, supra; *Phelan v. Roberts*, see note 38, supra.

**44.** *Smith v. Baptist Foundation of Oklahoma*, see note 37, supra; *Clark v. Unknown Heirs*, see note 41, supra.

**45.** *Merritt v. Merritt*, 2003 OK 68, ¶16, 73 P.3d 878, *cert. denied* 540 U.S. 1049, 124 S.Ct., 820, 157 L.Ed.2d 697 (2003).

**46.** *Dunavant v. Evans*, 1942 OK 162, ¶10, 127 P.2d 190; *Nickel v. Janda*, see note 38, supra.

**47.** The deed filed by Buckhorn Ranch Partnership acknowledges that the deed between Sullivan and Partnership I erroneously identified Partnership I as a grantee, see note 7, supra.

determination can be made on the record presented, as matter of law, as to who had *actual physical* possession of the property or who exerted acts of *actual* ownership immediately following the Partnership I conveyance. The post-conveyance conduct of the parties is material to determine the question of whether elements of either equitable estoppel and laches were met and whether the defenses should be applied to bar recovery. Accordingly, we hold that the trial court entered summary judgment prematurely on these equitable defenses.

## CONCLUSION

¶ 35 Property abandoned by order of the bankruptcy court is no longer property administered by the bankruptcy estate and jurisdiction over the property is relinquished.[48] Because the bankruptcy court lacks authority to order a sale of the property after abandonment, a post-abandonment property conveyance by the debtor will not qualify as a "judicial sale" under 12 O.S.2001 § 93.[49]

¶ 36 Summary judgment is proper only when the pleadings, affidavits, depositions, admissions or other evidentiary material establish that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law.[50] Collectively, the facts raise issues of material questions of fact regarding whether Sullivan received the benefits of the conveyance or made the conveyance with full knowledge of the purpose and source of the benefits. Because the evidentiary materials are not dispositive of the material questions of fact regarding the application of estoppel under 16 O.S.2001 § 11,[51] or the application of the equitable defenses of laches and estoppel, the trial court entered summary judgment prematurely.

48. *In the Matter of Bray,* see note 3, supra; *In re Argiannis;* see note 3, supra; *In re Dewsnup v. Timm,* see note 3, supra.

49. Title 12 O.S.2001 § 93, see note 4, supra.

**CERTIORARI PREVIOUSLY GRANTED; THE COURT OF CIVIL APPEALS OPINION IS VACATED; TRIAL COURT REVERSED AND CAUSE REMANDED.**

WATT, C.J., WINCHESTER, V.C.J., LAVENDER, J., HARGRAVE, J., EDMONDSON, J., TAYLOR, J., COLBERT, J., concur.

OPALA, J., concurs in result.

50. *Bogart v. Caprock Communications Corp.,* see note 20, supra; *Prichard v. City of Oklahoma City,* see note 20, supra; *Krokowski v. Henderson Nat'l Corp.,* see note 20, supra.

